**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LOCAL UNION 97,**
**INTERNATIONAL**
**BROTHERHOOD OF**
**ELECTRICAL WORKERS,**
**AFL-CIO,**

|  |  |
|---|---|
|  | **5:20-cv-1372** |
| **Plaintiff,** | **(GLS/ML)** |
|  |  |
| **v.** |  |
|  |  |
| **NRG ENERGY, INC.,** |  |
|  |  |
| **Defendant.** |  |

_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Blitman, King Law Firm              KENNETH L. WAGNER, ESQ.
Franklin Center
443 North Franklin Street
Suite 300
Syracuse, NY 13204-1415

**FOR THE DEFENDANT:**
Bond Schoeneck & King, PLLC         BRIAN J. BUTLER, ESQ.
One Lincoln Center                  BRENDAN M. SHEEHAN, ESQ.
Syracuse, NY 13202

Shawe Rosenthal LLP                 ALEXANDER CASTELLI, ESQ.
One South Street - Suite 1800       J. MICHAEL MCGUIRE, ESQ.
Baltimore, MD 21202

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Local Union 97, International Brotherhood of Electrical Workers, AFL-CIO (hereinafter "the Union") commenced this action against defendant NRG Energy, Inc., seeking to compel arbitration of a dispute under certain collective bargaining agreements.  (Compl., Dkt. No. 1.) Pending before the court is NRG's motion to dismiss.  (Dkt. No. 14.)  For the reasons that follow, the motion is granted, and the Union's complaint is dismissed.

### II. Background[1]

The Union is the exclusive collective bargaining agent for approximately thirty-five NRG employees, employed at NRG's electricity generating stations at Oswego Harbor, New York and Dunkirk, New York. (Compl. ¶¶ 11, 13.)  Since 1999, the Union and NRG have been parties to consecutive collective bargaining agreements covering employees at the Oswego Harbor and Dunkirk stations.  (*Id.* ¶ 14.)

In September 2003, while negotiating a new collective bargaining agreement, the Union and NRG agreed to various retiree benefits for

---

[1] The facts are drawn from the Union's complaint, (Dkt. No. 1), and presented in the light most favorable to it.

2

then-current employees as well as for future employees, and set forth the

terms of that agreement in a memorandum of agreement (hereinafter "the

2003 MOA").  (*Id.* ¶ 15.)  The 2003 MOA states in relevant part that:

"Current employees will be grandfathered as to their participation in life

insurance Plan A or Plan B at retirement" and "[e]mployees hired after

September 30, 2003 will not be provided with a life insurance benefit upon

retirement."  (*Id.* ¶¶ 16-17.)

Also in September 2003, the Union and NRG executed a new

collective bargaining agreement, effective October 1, 2003 through

September 29, 2007 (hereinafter "the 2003-2007 CBA").  (*Id.* ¶ 15.)  Article

XIX.2(d)(2) of the 2003-2007 CBA (hereinafter "the Life Insurance

Provision"), states: "Employees hired after September 30, 2003 will not be

provided with a life insurance benefit upon retirement."  (*Id.* ¶ 18.)

The Union and NRG executed subsequent collective bargaining

agreements with effective dates: September 30, 2007 through September

24, 2011 (hereinafter "the 2007-2011 CBA"); February 25, 2011 through

September 24, 2013 (hereinafter "the 2011-2013 CBA"); September 25,

2013 through September 24, 2015, and extended through March 24, 2016

(hereinafter "the 2013-2016 CBA"); and March 24, 2016 through

September 21, 2019 (hereinafter "the 2016-2019 CBA") containing the same Life Insurance Provision.  (*Id.* ¶ 19.)

In the current collective bargain agreement between the Union and NRG, effective September 22, 2019 through September 21, 2023 (hereinafter "the 2019-2023 CBA"), the Life Insurance Provision was amended, and states: "Effective November 1, 2019 the retiree life insurance benefit for employees hired prior to September 30, 2003, will be a lump sum of $10,000."  (*Id.* ¶¶ 14, 20.)  This provision applies to NRG *employees* employed under the 2019-2023 CBA that were hired prior to September 30, 2003, and who did or will retire on or after November 1, 2019. (*Id.* ¶ 21.)  It does not apply to *retirees* who were hired prior to September 20, 2003 and retired before November 1, 2019 (hereinafter "the Pre-2019 Retirees").  (*Id.*)  However, NRG ultimately notified the Pre-2019 Retirees that, effective January 1, 2021, their life insurance benefits would also be changed to a lump sum of $10,000.  (*Id.* ¶ 22.)

Accordingly, a dispute has arisen between the Union and NRG regarding retiree life insurance benefits.  (*Id.* ¶ 23.)

Article XXI of the 2019-2023 CBA, titled "Grievances" contains an arbitration clause, which provides:

4

> Should the [Union] claim that a dispute or difference
> has arisen between [NRG] and the [Union] as to the
> meaning, application or operation of any provision of
> this agreement, such dispute or difference shall be
> presented within thirty (30) working days and settled
> in the following manner, and there shall be no quitting
> or suspension of work during or on account of such
> dispute or difference.[2]

(*Id.* ¶ 25.)

On October 22, 2020, the Union submitted a grievance in the manner prescripted by the 2019-2023 CBA alleging on behalf of "all affected retirees" (the Pre-2019 Retirees), that NRG's action violated "all applicable sections relating to Retiree Life Insurance."  (*Id.* ¶¶ 26-29.)

On October 28, 2020, NRG Labor Relations Director Rich North emailed a letter to the Union, stating:

> Retirees are not "employees" of [NRG], and they are
> not covered by [the 2019-2023 CBA] with the Union.
> Nor is [NRG] required to recognize the Union as a
> "representative" of retirees, and we decline to do so.
> [NRG] will not be accepting or processing any
> "grievance" under the [2019-2023] CBA that purports
> to challenge [NRG's] actions regarding its retirees.

(*Id.* ¶ 30.)

The Union has obtained "written authorization from 113 [r]etirees to

---

[2]  This provision appears in "substantively identical form" in the 2007-2011 CBA, the 2011-2013 CBA, the 2013-2016 CBA, and the 2016-19 CBA (collectively, along with the 2003-2007 CBA, hereinafter "the Prior CBAs").  (*Id.* ¶ 28.)

represent them in any arbitration or other legal proceeding necessary to secure their contractually guaranteed life insurance benefits." (*Id.* ¶ 32.)

The Union filed a complaint on November 5, 2020, seeking to compel arbitration of this dispute. (*Id.* ¶¶ 33-37.)

### III.  **Standard of Review**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  **Discussion**

NRG seeks dismissal of the complaint on the grounds that: (1) arbitration cannot be compelled under the 2019-2023 CBA, (2) the presumption of arbitrabilty does not apply, (3) the 2003 MOA is not incorporated by reference into any of the CBAs between the parties, and (4) arbitration cannot be compelled under the Prior CBAs.  (*See generally* Dkt. No. 14, Attach. 7; Dkt. No. 23)  For the reasons stated below, the court agrees.

### A.  **Arbitration Under the 2019-2023 CBA**

NRG seeks dismissal of the Union's complaint in part because the

Union cannot compel arbitration under the 2019-2023 CBA.  (Dkt. No. 14, Attach. 7 at 9-10.)

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations omitted).  The duty to arbitrate "is a creature of the collective-bargaining agreement [such] that a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so."  *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 250-51 (1977).

"[T]he issue of arbitrability is undeniably one for judicial determination."  *Chicago Pneumatic Tool Co. v. Smith*, 890 F. Supp. 100, 112 (N.D.N.Y.1995).  Courts "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy."  *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 179 (2d Cir. 2019) (quoting *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015)).

NRG argues that the Union is foreclosed from compelling arbitration

under the 2019-2023 CBA because the 2019-2023 CBA Life Insurance

Provision[3] "applies only to 'employees'—a term defined in Article VI [of the

2019-2023 CBA] as 'an employee on the active payroll who is not classed

as probationary,'" not the Pre-2019 Retirees, and, thus, there is no dispute

between the parties as to the meaning, application or operation of any

provision of the 2019-2023 CBA."  (Dkt. No. 14, Attach. 7 at 9-10.)  The

Union also acknowledges the inapplicability of the 2019-2023 CBA Life

Insurance Provision to the Pre-2019 Retirees.  (*Id.* ¶ 21 ("[The 2019-2023

CBA Life Insurance Provision] does not apply to already retired retirees

whose rights to Plan A or Plan B benefits were 'grandfathered' at their

retirement.").)

    The court agrees with NRG.  Since the 2019-2023 CBA Life

Insurance Provision only concerns the retirement benefits of current

*employees*, Pre-2019 Retirees do not have grounds to compel arbitration

under the 2019-2023 CBA's arbitration clause, as there is no "dispute or

difference . . . as to the meaning, application or operation of any provision

of [the 2019-2023 CBA]."  (Dkt. No. 14, Attach. 7 at 9-10.)  The parties

agree that the 2019-2023 CBA Life Insurance Provision does not affect the

---

[3] "Effective November 1, 2019 the retiree life insurance benefit for employees hired prior to September 30, 2003, will be a lump sum of $10,000."  (*Id.* ¶ 20.)

Pre-2019 Retirees' life insurance benefits, (Dkt. No. 14, Attach. 7 at 9; Compl. ¶ 21), and neither party cites the 2019-2023 CBA as the justification for the conversion of Pre-2019 Retirees' life insurance benefits to a lump sum, (*see generally* Compl.; Dkt. No. 14, Attach. 7).

The "dispute or difference" that has given rise to the present disagreement between the parties, in actuality, relates to the "meaning, application or operation" of the 2003 MOA that "grandfathered" the Pre-2019 Retirees' life insurance benefits, an agreement that, for the reasons that will be discussed below, *see infra* Part IV.C, is not incorporated into the 2019-2023 CBA.  *See Directors Guild of America, Inc. v. Nat'l Broad. Co.*, 78 Civ. 6106, 1979 WL 1841, at *2 (S.D.N.Y . Feb. 9, 1979) ("[W]here the asserted grievance is patently outside the terms of the contract, courts have found the disputes nonarbitrable." (citations omitted)).

The Union contends that, "by implication," the 2019-2023 CBA Life Insurance Provision addresses the rights of Pre-2019 Retirees, (Dkt. No. 21 at 9), but this is simply not the case, as neither that group of retirees nor their life insurance benefits are mentioned in, or affected by, the 2019-2023 CBA.

**B.    The Presumption of Arbitrability**

NRG further contends that the Union's complaint must be dismissed because the Union is not entitled to the presumption of arbitrability as it relates to the present dispute.  (Dkt. No. 14, Attach. 7 at 6.)

It is well established that when contracts contain an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)) (internal quotations omitted).  In that regard, all "[d]oubts should be resolved in favor of coverage."  *Id.*

"This presumption is particularly applicable where . . . the arbitration clause is broad.  Therefore, in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration will suffice." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Local 4-5025 v. E.I. DuPont de Nemours & Co.*, 565 F.3d 99, 102

(2d Cir. 2009) (internal quotation marks and citation omitted)*; see Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 301 n.8 (2010) ("Although *Warrior & Gulf* contains language that might in isolation be misconstrued as establishing a presumption that labor disputes are arbitrable whenever they are not expressly excluded from an arbitration clause, the opinion elsewhere emphasizes that even in LMRA cases, 'courts' must construe arbitration clauses because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (citations omitted)).

While the arbitration clause in the 2019-2023 CBA is "broad," *see infra* Part IV.C, the presumption of arbitrability does not apply here.  The dispute before the court relates to the Pre-2019 Retirees' life insurance benefits.  (Compl. ¶ 29.)  The parties are in agreement that the 2019-2023 CBA Life Insurance Provision does not affect these Pre-2019 Retirees' life insurance benefits, (Dkt. No. 14, Attach. 7 at 9; Compl. ¶ 21), and neither party cites any portion of the 2019-2023 CBA as the justification for the conversion of Pre-2019 Retirees' life insurance benefits from Plan A or Plan B to a lump sum, (*see generally* Compl.; Dkt. No. 14, Attach. 7).

The only agreement before the court that addresses the Pre-2019

Retirees' life insurance benefits is the 2003 MOA, which does not contain

an arbitration clause and is not incorporated into the 2019-2023 CBA.  *See*

*infra* Part IV.C.  Accordingly, the presumption of arbitrability does not apply

to the 2019-2023 CBA, as the present dispute does not arise out of the

2019-2023 CBA.  *See AT & T Techs.,* 475 U.S. at 650 ("[I]t has been

established that *where the contract contains an arbitration clause*, there is

a presumption of arbitrability." (citation omitted) (emphasis added)); *see*

*also Cup v. Ampco Pittsburgh Corp.*, 903 F.3d 58, 63-65 (3d Cir. 2018)

(holding, where a section of a collective bargaining agreement applied to

*employees* and not *retirees*, and a separate memorandum of

understanding between the parties applied to retirees, that "the CBA

indisputably has an arbitration clause . . . but the *MOA*—the contract under

which this dispute actually arises—does not," and that "where there is no

arbitration clause, the presumption [of arbitrability] does not apply").

## C.   Incorporation of the 2003 MOA into any of the CBAs[4]

NRG seeks dismissal of the complaint for the additional reason that

---

[4] Although not attached to the Union's complaint, the court will consider the 2003-2007 CBA, the 2007-2011 CBA, the 2011-2013 CBA, 2013-2016 CBA, and 2016-2019 CBA without converting the motion to dismiss into one for summary judgment because the Union relies on the terms and effects of these documents in their complaint, thus making them integral to the complaint.  (*See generally* Compl.); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

the 2003 MOA is not incorporated into any of the CBAs between the parties, and, thus, disputes arising out of the 2003 MOA are not subject to arbitration under any of the CBAs between the parties.  (Dkt. No. 14, Attach. 7 at 10-12.)

"[P]arties to a contract are plainly free to incorporate by reference, and bind themselves . . . to, terms that may be found in other agreements." *Aceros Prefabricados, S.A. v. TradeArbed, Inc.*, 282 F.3d 92, 97 (2d Cir. 2002) (citation omitted).

"Under New York law and the law of [the Second] Circuit, two essential elements must be satisfied before a document will be deemed to have been incorporated by reference into another instrument or agreement."  *Torres v. Major Automotive Grp.*, No. 13-CV-687, 2014 WL 4802985, at *7 (E.D.N.Y. Sept. 25, 2014).  "First, the agreement must specifically reference and sufficiently describe the document to be incorporated, such that the latter may be *identified beyond all reasonable doubt*."  *Id.* (internal quotation marks and citations omitted).  "Second, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms."  *Id.* (internal quotation marks and citations omitted).  "The mere fact that a contract refers to another contract

does not mean that it has 'incorporated' the other contract."  *MBIA Ins.*

*Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 706 (S.D.N.Y.

2012) (citation omitted).

As noted by the Union, the 2003-2007 CBA, the 2007-2011 CBA, the

2011-2013 CBA, the 2013-2016 CBA, and the 2016-2019 CBA all contain

a provision titled "Supplemental Understandings," which states: "All

Memorandums of Agreement between [NRG] and the . . . Union were

continued with the understanding that there may be requirements for

modification due to the recommendations of the agreed upon

Subcommittees."[5]  (Dkt. No. 14, Attach. 2 at 69; Dkt. No. 14, Attach. 3

at 106; Dkt. No. 14, Attach. 4 at 66; Dkt. No. 14, Attach. 5 at 67; Dkt.

No. 14, Attach. 6 at 86.)

However, these provisions do not "specifically reference" and

"sufficiently describe" the 2003 MOA.  The Supplemental Understandings

provisions at best indicate that the 2003 MOA, and all other memorandums

of understanding between the parties, are continued and not invalidated as

---

[5]  This provision in the 2003-2007 CBA bares an effective date March 1, 1996 which predates the execution of the 2003 MOA, therefore this provision would not apply to the 2003 MOA.  (Dkt. No. 14, Attach. 2 at 69.)

a result of the Prior CBAs,[6] but not that it is incorporated into the Prior

CBAs.[7]  *See Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254,

2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) ("Here, the . . .  reference

to a class of documents, without more, is insufficient for the Court to find

that the Terms and Conditions were incorporated by reference." (citations

omitted)); *Sotheby's v. Fed. Exp. Corp.*, 97 F. Supp. 2d 491, 500 (S.D.N.Y.

2000) (holding that, where a document referenced "applicable tariffs, rules,

conditions of carriage, regulations and timetables" but did "not make clear

reference to the Service Guide," the Service Guide was not incorporated

by reference).

Further evidence that the 2003 MOA was not incorporated by

reference into the Prior CBAs is also apparent because, the respective

Supplemental Understandings sections of the Prior CBAs all reference

other past agreements, but not the 2003 MOA.  (Dkt. No. 14, Attach. 2 at

---

[6]  Notably, though, the CBAs' general durational clause states that upon execution the respective CBA "shall supersede all previous agreements between the Company and IBEW Local 97." (Dkt. No. 1, Attach. 1 at 47; Dkt. No. 14, Attach. 2 at 49; Dkt. No. 14, Attach. 3 at 48; Dkt. No. 14, Attach. 4 at 49; Dkt. No. 14, Attach. 5 at 63.)

[7]  NRG argues on reply that, because the Union's response failed to address NRG's argument that the 2003 MOA is superseded by the general durational clause contained in each of the CBAs, the Union has consented to the validity of this argument.  (Dkt. No. 23 at 5-6); *see Payne v. Cornell Univ.*, No. 18-CV-1442, 2021 WL 39684, at *10 (N.D.N.Y. Jan. 5, 2021).  Given that the 2003 MOA is not incorporated by reference into any of the CBAs between the parties, the court need not address this issue.

66-69; Dkt. No. 14, Attach 3. at 52-55; Dkt. No. 14, Attach. 4 at 63-66; Dkt. No. 14, Attach. 5 at 64-67; Dkt. No. 14, Attach. 6 at  83-87.)[8]; *see also supra* note 6.  This indicates that the parties knew how to specifically incorporate agreements external to the CBAs into the CBAs, but intentionally excluded the 2003 MOA.

The Union contents that the 2003 MOA "supplements" the Prior CBAs and is effectively an arbitrable side agreement.  (Dkt. No. 21 at 13-15.)  The court disagrees.

When determining whether a side agreement lacking its own arbitration clause is arbitrable under a separate "main agreement" that does contain an arbitration clause, the court must first determine whether the arbitration clause is "broad" or "narrow."  *See NYP Holdings, Inc. v. Newspaper and Mail Deliverers' Union*, No. 01 Civ. 4451, 2002 WL 1603145, at *4 (S.D.N.Y. July 18, 2002).  "[I]f the clause is narrow, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration

---

[8]  In fact, the 2019-2023 CBA explicitly excludes it, stating:  "The only memorandums of Agreements, Memorandums of Understandings, Side Letters, etc. between the parties in force as of the effective date of this Agreement are as follows: [seven agreements, not including the 2003 MOA]."  (Dkt. No. 1, Attach. 1 at 60.)

clause." *Id.* (internal quotation marks and citation omitted). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (citation omitted). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties rights and obligations under it.'" *Id.* (internal quotation marks and citation omitted).

The arbitration clause in the CBAs between the parties is broad. *ACE Capital Re Overseas Ltd. V. Cent. United Life Co.*, 307 F.3d 24, 26 (2d Cir. 2002) (finding that the following clause was broad: "[A]ny dispute [that] shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved"); *Teamsters Local 456 v. AMEC Commercial, LLC*, No. 18-CV-854, 2019 WL 3429594, at *5 (S.D.N.Y. July 30, 2019) (finding an agreement "contain[ing] an arbitration clause that applies to '[a]ll grievances or disputes involving any controversy, dispute or misunderstanding arising as to the meaning, application or observance of any provision of this Agreement,'" was broad).

17

The Union claims that "*any* contractual dispute between the parties may be submitted by the Union to arbitration" because the Prior CBAs' arbitration clauses are broad and the Supplemental Understandings sections reference the continuation of prior agreements.[9]  (Dkt. No. 21 at 14.)  But, even under a broad arbitration clause, a collateral matter must "implicate[] issues of contract construction or the parties' rights and obligations under it" to be subject to arbitration.  *Louis Dreyfus Negoce*, 252 F.3d at 224 (citation omitted).  Here, there are no issues of contract construction, as both parties agree to the effect of the 2019-2023 CBA Life Insurance Provision.  (Compl. ¶ 21; Dkt. No. 14, Attach. 7 at 5.)  Further, the rights or obligations of the parties are not implicated, as both parties acknowledge the 2019-2023 CBA does not affect the Pre-2019 Retirees' life insurance benefits referenced in the 2003 MOA.  (*Id.*)  Accordingly, the 2003 MOA does not "supplement" the Prior CBAs as the Union claims, and, thus, it is not subject to arbitration under them.

---

[9]  "All Memorandums of Agreement between [NRG] and the . . . Union were continued with the understanding that there may be requirements for modification due to the recommendations of the agreed upon Subcommittees."  (Dkt. No. 14, Attach. 2 at 69; Dkt. No. 14, Attach. 3 at 106; Dkt. No. 14, Attach. 4 at 66; Dkt. No. 14, Attach. 5 at 67; Dkt. No. 14, Attach. 6 at 86.)

**D.** **Potential Arbitration Under Any of the Prior CBAs**[10]

Lastly, NRG seeks dismissal because the Union cannot compel arbitration under any of the Prior CBAs.

A grievance that arises after the applicable contract expires can be said to arise under that contract, but only "where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Newspaper Guild/CWA of Albany v. Hearst Corp.*, 645 F.3d 527, 530 (2d Cir. 2011) (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991)).

*1.   Facts and Occurrences*

Here, the grievance does not involve facts and occurrences that arose before expiration of any of the Prior CBAs.  NRG's conversion of

---

[10]  The complaint does not allege that the dispute is arbitrable under the 2003-2007 CBA, (Compl. ¶ 23 ("Accordingly, a dispute had arisen between the Union and the Company as to the meaning and application of [the Life Insurance Provision] of the [2019-2023 CBA], as well as of the 2007-[20]11 CBA, the 2011-[20]13 CBA, the 2013-[20]16 CBA, and the 2016-[20]19 CBA."); *id.* ¶ 37; *id.* at 8.), therefore they are foreclosed from seeking arbitration under the 2003-2007 CBA.  In any event, for the reasons stated in this Memorandum-Decision and Order, had the Union sought to compel arbitration under the 2003-2007 CBA, that allegation would not have avoided dismissal.

Pre-2019 Retirees' life insurance benefits to a $10,000 lump sum became effective January 1, 2021, (Compl. ¶ 22), and, while it is unclear based on the pleadings exactly when notice was given to Pre-2019 Retirees of this impending change to their life insurance benefits, it occurred after the 2016-2019 CBA expired, (*id.*).

### 2.    Accrued or Vested Right

To show that a lifetime right has vested, a plaintiff "must identify specific written language that promises lifetime benefits." *Kelly*, 933 F.3d at 180 (citations omitted).[11]  "The written language must tie the benefits that a recipient will receive to that recipient's lifetime or to an indefinite duration." *Id.* "For example, contractual language stating that retirees' life insurance benefits will remain at a stated level for the remainder of their lives can reasonably be interpreted to creat[e] a promise to vest lifetime life insurance benefits." *Id.* (internal quotation marks and citation omitted). "When a contract is silent as to the duration of retiree benefits, a court may

---

[11]  The Union's contention that this analysis is an improper determination of the merits of its claim, (Dkt. No. 21 at 12-13), is unpersuasive. *See Litton,* 501 U.S. at 205-06 ("*Nolde Brothers* does not announce a rule that postexpiration grievances concerning terms and conditions of employment remain arbitrable. . . . [The] presumption is limited to disputes arising under the contract.  A postexpiration grievance can be said to arise under the contract only where it involves an action taken after expiration infringes a right *that accrued or vested* under the agreement." (emphasis added)).  Determining whether the Pre-2019 Retirees have a vested lifetime interest is necessary to reach a conclusion as to whether they may seek arbitration under the *Litton* test.

not infer that the parties intended those benefits to vest for life." *M&G Polymers*, 574 U.S. at 442; *see Donohue v. New York*, 347 F. Supp. 3d 110, 128-29 (N.D.N.Y. 2018) (same).

Here, there is no language in any of the CBAs indicating that the Pre-2019 Retirees would receive lifetime life insurance benefits, nor is there language present in the 2003 MOA that would indicate this.  The 2003 MOA states that "[c]urrent employees will be grandfathered as to their participation in life insurance Plan A or Plan B at retirement."  (Compl. ¶ 16.)  This is not "specific written language that promises lifetime benefits."  *Kelly*, 933 F.3d at 180.  While the Union claims "grandfathered" means "lifetime" because "what else could it have meant?", it could also mean "grandfathered" for the duration of the active CBA, for a term of years, or for any other amount of time.  The 2003 MOA is silent as to how long the Pre-2019 Retirees' life insurance benefits would be "grandfathered" for, and "[w]hen a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life."  *M&G Polymers*, 574 U.S. at 442.

Therefore, there is no vested right to "lifetime" life insurance benefits for the Pre-2019 Retirees and, thus, there can be no enforcement of these

rights through arbitration under any of the Prior CBAs.

    *3.    Whether the Contractual Right Survives Expiration of the CBAs*

    For similar reasons mentioned above, there is no indication that the Pre-2019 Retirees' life insurance benefits, "under normal principles of contract interpretation . . . survived expiration of the remainder of the [Prior CBAs]." *Newspaper Guild*, 645 F.3d at 530 (citation omitted).

    As previously noted, the Prior CBAs and the 2003 MOA do not indicate how long the Pre-2019 Retirees' benefits would be "grandfathered" for; therefore, there is nothing in the 2003 MOA or Prior CBAs indicating that the Pre-2019 Retirees' "grandfathered" benefits would survive the expiration of any of the Prior CBAs.  For this reason, the Pre-2019 Retirees' life insurance benefits may not be arbitrated under any of the Prior CBAs.

## V.  Conclusion

    **WHEREFORE**, for the foregoing reasons, it is hereby

    **ORDERED** that NRG's motion to dismiss (Dkt. No. 14) is **GRANTED**; and it is further

    **ORDERED** that the Union's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

September 21, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge